# United States District Court
## Eastern District of California

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL COMPLAINT** |
| V. | |
| **Paul THOMPSON** | **DOCKET NUMBER:** 6:22-mj-00004-HBK |

I, **Justin Fey,** Law Enforcement Park Ranger, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. In Yosemite National Park, in the Eastern District of California, **Paul Thompson** did or was:

**Count 1:** Presence in a park area when under the influence of alcohol or a controlled substance to a degree that may endanger oneself or another person, or damage property or park resources in violation of Title 36 Code of Federal Regulations 2.35(c)
**Maximum penalty: 6 months imprisonment and/or $5,000 fine**

I further state I am a commissioned Law Enforcement Officer with the National Park Service. This complaint is based on the following facts and information observed by me and or provided to me by other National Park Service Law Enforcement Rangers.

I, Supervisory Park Ranger Justin Fey, am a Type 1 Law Enforcement Officer with approximately 11 years of law enforcement experience to include successfully completing training at the Federal Law Enforcement Training Center in 2017. I am a DUI instructor, Use of Force Instructor, and the Field Training Lead for Yosemite National Park. My duties include the detection of, and enforcement of individuals present in park under the influence of intoxicants to a degree they may be a danger to themselves, other, property and park resources.

On June 14th, 2022 at approximately 1528 Yosemite Emergency Communications (ECC) reported Aramark Human Resources staff requested a welfare check for an employee at the Aramark HR Office they suspected was under the influence, had a "bad attitude" was asked to leave and would not.

At approximately 1533 U.S. Park Ranger Jody Davis and I, Supervisory Park Ranger Justin Fey, arrived outside the Aramark HR Office where we met the reporting party, Yolanda Chely, Aramark Housing Manager. Chely advised Paul THOMPSON was inside the Aramark HR office and described he "is under the influence or under the influence of some substance" and is being "aggressive and refusing to leave". Chely advised THOMPSON and a HR manager had or

Speedy Trial Act Applies: **No**                                        U.S. v. **THOMPSON**
                                                                                            Criminal Complaint

exchanged "some words". When asked if they wanted him to leave the building Chely advised, "Yes".

As Officer Davis and I approached the glass door of the Aramark HR Office I saw a man in a black shirt and jeans standing, approximately 1-2 feet away, face to face, with a HR manager. Prior to opening the door, the man, later identified from a current California Identification Card, as Paul THOMPSON stepped away from the HR Manager and staggered two or three steps towards the door. As I opened the door THOMPSON was standing still facing me with his left hand out, palm out, towards me. I asked if he was Paul and he replied he was Paul THOMPSON. When asked to step outside to talk THOMPSON verbally agreed but hesitated at the front door, hunching forward, and staring at me. From approximately 3 feet away I could smell the distinct odor of alcoholic beverages coming directly from THOMPSON's person. I could see THOMPSON's eye lids were depressed, and it appeared he was having difficulty focusing his eyes. THOMPSON was staring forward more than making eye contact. I reminded THOMPSON he had been asked to leave and he proceeded out the front door between Officer Davis and I.

THOMPSON walked into the hallway outside the Aramark HR Office with his hands raised above his head. When told he could put down his hands and relax THOMPSON removed his green backpack from his shoulder and dropped it on the ground between us. THOMPSON stated he did not want to go to jail. THOMPSON was advised we were investigating a report of trespassing and we were not going to talk in the narrow hallway but on a bench around the corner. I attempted to pick up THOMPSON's backpack for him but he refused, picked it up and began walking away quickly. As we entered the breezeway I instructed THOMPSON to sit on the vacant bench which he did.

I began to asked how many alcoholic beverages he consumed and THOMPSON interrupted and replied, "How many beers have I had? I had one beer in the fucking..." THOMPSON did not complete the sentence and began reaching into his right pocket with his right hand. I ordered THOMPSON to not reach into his pocket, but he produced a set of keys which he handed me.

THOMPSON said, "I have a knife, I have a knife sir!"

THOMPSON began reaching around his left pocket with his left hand. I ordered THOMPSON to stand up which he did with my left hand on his left arm. When ordered to turn around so I could remove the knife from his left pocket THOMSPON quickly reached into his left pocket with is right hand. With my left hand on THOMPSON's left wrist I pulled THOMPSON right hand out of his left pocket with my right hand while pushing THOMPSON back down onto the bench. THOMPSON had accessed a black wallet from his left pocket. The wallet was flung over his head when I pulled his right hand of his pocket.

THOMPSON said, "it was a wallet you dumbass". THOMPSON pulled his hands in front of his body and interlaced his fingers as to pray and said, "Pray to God, that what, hurry the fuck up".

Speedy Trial Act Applies: **No**              U.S. v. **THOMPSON**
                                              Criminal Complaint

I placed THOMPSON's left hand in a handcuff and pulled his left arm behind his back. Officer Davis grabbed THOMPSON's right arm and pulled it behind his back. THOMPSON attempted to grab the handcuffs behind his back and pull his arms away while saying, "weapon on target, weapon on target". We were able to place both hands into handcuffs behind his back.

When asked where the knife was, THOMPSON said, "There is no knife! That's the problem. What if I said the joke, right?"

I completed a frisk for weapons and did not locate a knife on THOMPSON's person.

While discussing the reported trespassing and being under the influence investigation THOMPSON suggested if let go he would go to the store buy beer and "get fucking drunk".

When asked if he meant "drunker" THOMPSON did not answer.

THOMPSON was the suspect of a reported disorderly conduct, fighting and being under the influence investigation at approximately 2350 on June 13th, 2022 near his residence in Yosemite National Park. Responding officers were unable to locate THOMPSON but were advised he was dragged back to his residence by a friend where he was sleeping. When asked if he was meeting about this reported incident THOMPSON said, "No comment".

Probable cause existed THOMPSON was under the influence to a degree he may be a danger to himself, others, property or park resources. Due to the extended transport time to the Fresno County Jail and draw on park resources to complete a transport we attempted to identify and locate a third party who may be willing to have THOMPSON released to them.

While attempting to locate a roommate or friend to assist THOMPSON, he began to comment on my defensive equipment, including my taser, challenging me if I was ready to shoot it. THOMPSON muttered he had a gun before answering himself that he did not. THOMPSON continued to speak in incomplete sentences with incomplete thoughts about human resources and my defensive equipment.

When asked if his plan was to continue to drink (alcohol) THOMPSON agreed.

When U.S. Park Ranger Jacob Blade arrived on scene THOMPSON advised him he did not have drugs, alcohol, a knife or a weapon although he wished he did have a weapon while muttering something about "these guys". Officer Blade interviewed HR and Housing staff inside the Aramark HR Office.

THOMPSON advised if he walked away from this incident and someone attempted to touch him again, "I swear to God it's going to fucking hurt". THOMPSON could not or would clarify his statement but made it clear he would not be the one hurt.

Speedy Trial Act Applies: **No**

U.S. v. **THOMPSON**
Criminal Complaint

The breezeway was a public walkway with moderate pedestrian traffic walking near us. THOMPSON made several attempts to stand up from the bench after I ordered him to stay seated. Although probable cause existed for a physical arrest, I advised THOMPSON he was not under arrest but we were going to place him in the rear seat of our patrol vehicle. This way was a continued effort to locate a third party while removing THOMPSON from a public space where he was also not following orders to stay seated. Officer Davis and I walked THOMPSON to our patrol vehicle where I attempted to place him in the rear seat. THOMPSON refused to place his legs inside the vehicle to close the door. I lifted THOMPSON's legs and pushed them inside the vehicle to close the door.

While in the rear seat of our patrol vehicle THOMPSON was fixated on our patrol rifle and shotgun. THOMPSON would only comment on the observed firearms when asked about a friend or roommate who may be able to assist him. When asked why he was so focused on our defensive equipment THOMPSON spoke in incomplete sentences and noises.

Officer Blade returned from the Aramark HR office. At our patrol vehicle Officer Blade advised THOMPSON arrived at the Aramark HR Office at approximately 1510. No meeting was scheduled. THOMPSON was banging on the front door or front desk demanding to speak with Housing staff. Staff met with THOMPSON in a conference room where he was described as acting "out of his mind" and leaning on stuff and touching objects in the room in a "not normal way". THOMPSON was described as rambling but not directing his speech towards staff present. THOMPSON noted a staircase in the office and stated, "The staircase is held up by 9mm" which alarmed staff, prompting them to call Yosemite ECC for assistance. Aramark HR advised THOMPSON was involved in a dispute at the Wellness Center on Southside Drive the morning of June 14th, 2022, where he was told to leave the building. THOMPSON was believed to be under the influence and challenging Wellness Center Staff to make him leave.

Officer Blade also attempted, unsuccessfully, to identify a third party who may be willing to have THOMPSON released to them. When asked by Officer Blade, THOMPSON continued to discuss the weapons in the patrol vehicle and was not answering questions appropriately, described as coming in and out of focus and being forgetful.

I arrested THOMPSON for being under the influence of alcohol and or controlled substances to a degree he may be a danger to himself, other, property or park resources.

I declare under penalty of perjury the information which I have set forth above on the face of this criminal complaint is true to the best of my knowledge.

06/15/2022
Date

Ranger: **Justin Fey**
Law Enforcement Park Ranger
Yosemite National Park, CA

Speedy Trial Act Applies: **No**

U.S. v. **THOMPSON**
Criminal Complaint

Sworn to before me and subscribed in my presence in Yosemite National Park, California.

Affidavit submitted by email/pdf and attested to me as true and accurate by telephone consistent with Fed.R.Crim. P. 4.1 before me this __15__ day of June, 2022.

06/15/2022 at 11:33 AM
Date

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

Speedy Trial Act Applies: **No**

U.S. v. **THOMPSON**
Criminal Complaint